# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JARED JONES, individually and on behalf of all others similarly situated, | § § § § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:26-cv-00849 |
| v. | § | |
| | § | |
| COMFORT SYSTEMS USA, INC., THE INVESTMENT COMMITTEE OF THE COMFORT SYSTEMS USA, INC. 401(K) PLAN, and JOHN DOES 1-10, | § § § § § § | **ORAL ARGUMENT REQUESTED** |
| Defendants. | | |

**DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.............................................................................. i

TABLE OF AUTHORITIES ....................................................................... ii

NATURE AND STAGE OF THE PROCEEDING ...........................................1

INTRODUCTION ........................................................................................1

BACKGROUND ..........................................................................................2

STATEMENT OF ISSUES REQUIRING RESOLUTION ...............................3

LEGAL STANDARD....................................................................................3

ARGUMENT ...............................................................................................6

I.      Plaintiff Does Not Plausibly Allege A Fiduciary Breach. .......................6

        A.     Plaintiff's exclusive reliance on the Prudential GIF's
               alleged underperformance is fundamentally flawed. ...................7

        B.     The Complaint does not allege any meaningful benchmark. ........8

        C.     Plaintiff's speculation about Empower's solvency does not
               support any injury. ...................................................................13

II.     Plaintiff Fails to Allege a Prohibited Transaction. ..............................15

        A.     Plaintiff lacks Article III standing...........................................15

        B.     Plaintiff's claim is time-barred.................................................17

        C.     Plaintiff fails to allege a "party in interest" or a
               "transaction."..........................................................................18

III.    Plaintiff Lacks Standing to Pursue Injunctive Relief...........................20

IV.     Plaintiff Fails to State a Monitoring Claim. ........................................21

CONCLUSION..........................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) ..................................................................9

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
137 F.4th 1015 (9th Cir. 2025), *cert. granted sub nom.*
*Anderson v. Intel Corp. Inv.*, No. 25-498 (U.S. Jan. 16, 2026)..................9, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................3, 4

*Barchock v. CVS Health Corp.*,
886 F.3d 43 (1st Cir. 2018) .................................................. 7, 8, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................4

*Cina v. Cemex, Inc.*,
2025 WL 2294331 (S.D. Tex. Aug. 8, 2025) ................................................10

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ..................................................................14

*Clinton v. Baxter Int'l Inc.*,
2025 WL 3470685 (N.D. Ill. Dec. 3, 2025) ..................................................13

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
704 F.3d 413 (5th Cir. 2013)..................................................................5

*Cunningham v. Cornell University*,
604 U.S. 693 (2025)..................................................................2, 16

*Cuvillier v. Taylor*,
503 F.3d 397 (5th Cir. 2007)..................................................................4

*D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity
Life Ins. Co.*,
88 F.4th 602 (5th Cir. 2023) .......................................................... 17, 18, 19

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Danza v. Fidelity Mgmt. Trust Co.,*
    533 F. App'x 120 (3d Cir.) ............................................................................19

*Davis v. Washington Univ. in St. Louis,*
    960 F.3d 478 (8th Cir. 2020).........................................................................10

*del Bosque v. Coca-Cola Sw. Beverages LLC,*
    2025 WL 3171326 (N.D. Tex. Nov. 13, 2025) ...........................................9, 10

*Dempsey v. Verizon Commc'ns, Inc.,*
    2026 WL 72197 (S.D.N.Y. Jan. 8, 2026) ................................................. 15, 20

*Ellis v. Fidelity Mgmt. Tr. Co.,*
    883 F.3d 1 (1st Cir. 2018) .................................................................................8

*Fifth Third Bancorp v. Dudenhoeffer,*
    573 U.S. 409 (2014).........................................................................................4

*Hughes Aircraft Co. v. Jacobson,*
    525 U.S. 432 (1999).......................................................................................16

*Hughes v. Nw. Univ.,*
    595 U.S. 170 (2022)......................................................................................5, 9

*Hutchins v. HP Inc.,*
    767 F. Supp. 3d 912 (N.D. Cal. 2025) ............................................................5

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.,*
    920 F.3d 890 (5th Cir. 2019).........................................................................14

*Intel Corp. Inv. Policy Comm. v. Sulyma,*
    589 U.S. 178 (2020).......................................................................................17

*John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank,*
    510 U.S. 86 (1993).........................................................................................16

*Kirschbaum v. Reliant Energy, Inc.,*
    526 F.3d 243 (5th Cir. 2008)...........................................................................6

*Laborers Nat'l Pension Fund v. N. Tr. Quantitative Advisors, Inc.,*
    173 F.3d 313 (5th Cir. 1999)...........................................................................6

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Lalonde v. Mass. Mut. Ins.*,
　728 F. Supp. 3d 141 (D. Mass. 2024) ...........................................................18

*Lee v. Verizon Commc'ns, Inc.*,
　837 F.3d 523 (5th Cir. 2016)........................................................................15

*Locascio v. Fluor Corp.*,
　2023 WL 320000 (N.D. Tex. Jan. 18, 2023)..........................................*passim*

*Lujan v. Defenders of Wildlife*,
　504 U.S. 555 (1992)............................................................................. 14, 20

*Matney v. Barrick Gold*,
　80 F.4th 1136 (10th Cir. 2023) ......................................................................9

*Matousek v. MidAmerican Energy Co.*,
　51 F.4th 274 (8th Cir. 2022) ..........................................................................9

*McWhorter v. Serv. Corp. Int'l*,
　748 F. Supp. 3d 459 (S.D. Tex. 2024)..........................................................20

*Meiners v. Wells Fargo & Co.*,
　898 F.3d 820 (8th Cir. 2018)....................................................................9, 10

*Metzler v. Graham*,
　112 F.3d 207 (5th Cir. 1997)..........................................................................6

*Mitchem v. Fed. Nat. Mortg. Ass'n*,
　571 F. App'x 298 (5th Cir. 2014) ...................................................................5

*Norris v. Hearst Tr.*,
　500 F.3d 454 (5th Cir. 2007)..........................................................................5

*Parker-Hannifan v. Johnson*,
　No. 24-1030 (U.S. Dec. 9, 2025)....................................................................9

*Perez v. Bruister*,
　823 F.3d 250 (5th Cir. 2016)........................................................................21

*Peters v. St. Joseph Servs. Corp.*,
　74 F. Supp. 3d 847 (S.D. Tex. 2015).............................................................15

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Pizarro v. Home Depot, Inc.*,
  634 F. Supp. 3d 1260 (N.D. Ga. 2022), *aff'd* 111 F.4th 1165
  (11th Cir. 2024) ...................................................................................................8

*Quigley v. ConocoPhillips Co.*,
  756 F. Supp. 3d 479 (S.D. Tex. 2024)..........................................................5

*Ramos v. Banner Health*,
  1 F.4th 769 (10th Cir. 2021) .......................................................................19

*Sievert v. Knight-Swift Transp. Holdings, Inc.*,
  780 F. Supp. 3d 870 (D. Ariz. 2025) .............................................................5

*Singh v. Deloitte LLP*,
  123 F.4th 88 (2d Cir. 2024)............................................................................9

*Singh v. RadioShack Corp.*,
  882 F.3d 137 (5th Cir. 2018).......................................................................21

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022) .......................................................................9

*Spokeo Inc v. Robins*,
  578 U.S. 330 (2016)......................................................................................14

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs.
  Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) ..........................................................................4

*Sulyma v. Intel Corp. Inv. Pol'y Comm.*,
  909 F.3d 1069 (9th Cir. 2018), *aff'd*, 589 U.S. 178 (2020) ..........................18

*Teets v. Great-West Life & Annuity Ins. Co.*,
  921 F.3d 1200 (10th Cir. 2019)...................................................................16

*Wagner v. Hess Corp.*,
  2025 WL 888428 (N.D. Tex. Mar. 21, 2025) ...............................................21

v

## <u>TABLE OF AUTHORITIES</u>
(continued)

**Page(s)**

*White v. Chevron Corp.*,
   2017 WL 2352137 (N.D. Cal. May 31, 2017) *aff'd*, 752 Fed.
   Appx. 453 (9th Cir. 2018) ...........................................................................17

**Statutes**

29 C.F.R. § 2550.404a-1....................................................................................9

29 U.S.C. § 1002...............................................................................................18

29 U.S.C. § 1104.................................................................................................6

29 U.S.C. § 1106........................................................................................ 18, 19

29 U.S.C. § 1113...............................................................................................17

**Other Authorities**

Fed. R. Evid. 201...............................................................................................5

## NATURE AND STAGE OF THE PROCEEDING

On February 3, 2026, Plaintiff filed his Complaint (Dkt. 1). Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Comfort Systems USA, Inc. and The Investment Committee of the Comfort Systems USA, Inc. 401(k) Plan (together, "Defendants") move this Court to dismiss the Complaint. Plaintiff fails to state a claim pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and fails to establish that this Court has subject-matter jurisdiction over the claims.

## INTRODUCTION

This lawsuit is part of a wave of recent cases undiscerningly challenging the reasonable decisions of ERISA fiduciaries regarding stable value funds. Through these lawyer-driven lawsuits, plaintiffs play hindsight critics faulting the fiduciaries for failing to prioritize pursuing top-of-the-market crediting rates over, as the product name implies, stability. The theory is nonsensical, effectively condemning one of the most secure investments participants can make.[1] Regardless, because ERISA fiduciaries are evaluated based on conduct, rather than an investment's results, Plaintiff's allegations fail to state a fiduciary breach claim.

Plaintiff also asserts a prohibited transaction claim, attempting to take

---

[1] *See* Ex. A at 3.

1

advantage of *Cunningham v. Cornell University*, which the Supreme Court predicted might result in an "avalanche of meritless litigation." 604 U.S. 693, 707 (2025). This claim is also flawed, as Plaintiff lacks standing, his claim is time-barred, and he fails to allege a "party in interest" or qualifying "transaction."

The Complaint should be dismissed with prejudice.

## BACKGROUND

Comfort Systems USA, Inc. ("Comfort Systems" or "Company") is a "leading building and service provider for mechanical, electrical and plumbing building systems." ¶25.[2] The Company administers the Comfort Systems USA, Inc. 401(k) Plan ("Plan"). ¶¶26, 41. The Company appointed the Investment Committee for the Plan ("Committee") to ensure the Plan's investments were appropriate and reasonable. ¶28.

The Plan offers an investment option called the Prudential[3] Guaranteed Income Fund ("Prudential GIF"). ¶42. The Prudential GIF is a stable value fund ("SVF"). Ex. B; *see* ¶71. SVFs are conservative, fixed income investment vehicles that provide stable rates of return. ¶69.

---

[2] Paragraphs refer to Complaint paragraphs. For purposes of this motion, Defendants accept Plaintiff's allegations as true, while conceding none.

[3] In 2023, Prudential Retirement Insurance and Annuity Company ("Prudential") became Empower Annuity Insurance Company ("Empower"). ¶13 n.4.

SVFs can be managed in different ways, including by guaranteed insurance contracts ("GICs"). ¶70. In a GIC, a "fund manager holds or invests in a single group annuity contract issued directly to the retirement plan and ***the plan sponsor receives a direct guarantee of principal and accrued interest*** from the issuer." Ex. A at 3 (emphasis added). Traditional GICs, like the Prudential GIF (¶71), are "contracts with an insurance company that guarantee a fixed rate of return backed by the assets of the insurer's general account." *Id*. The insurer—not the Plan—owns the underlying assets. *Id*.

The Prudential GIF is backed by the full faith and credit of Empower, which boasts strong financial ratings, including a "AA-" rating from S&P. Ex. B. The Prudential GIF provided participants with a ***direct guarantee*** of their principal ***and*** accrued interest. ¶70. Plan participants who invested in the Prudential GIF never lost any principal, including during the significant down market in 2022, because their assets ***were guaranteed to grow***. *Id*.

## STATEMENT OF ISSUES REQUIRING RESOLUTION

Should the Complaint be dismissed because Plaintiff (1) lacks Article III standing, and (2) fails to state a claim?

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

3

*Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept as true well-pleaded factual allegations, "[it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The factual allegations must raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Id*. at 570; *see Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

Motions to dismiss are an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). This is especially true for ERISA fiduciaries that find themselves "between a rock and a hard place," facing litigation regardless of what decision they make. *Id*. at 424. Compounding that problem, "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous" and "elevates the possibility that 'a plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

An ERISA plaintiff "must plausibly allege that [defendants] breached

4

one of [their fiduciary] duties" and that the breach "caus[ed]a loss to the . . . plan." *Quigley v. ConocoPhillips Co.*, 756 F. Supp. 3d 479, 485 (S.D. Tex. 2024) (quoting *Schweitzer v. Inv. Comm. of Phillips 66 Savs. Plan*, 960 F.3d 190, 195 (5th Cir. 2020)). The "appropriate inquiry" "will necessarily be context specific," requiring "due regard" for "the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022) (quoting *Dudenhoeffer*, 573 U.S. at 425).

The Court may consider documents incorporated into the Complaint by reference and matters of which this Court may take judicial notice. *See, e.g.*, *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 422 (5th Cir. 2013); Fed. R. Evid. 201(b). "[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *see Mitchem v. Fed. Nat. Mortg. Ass'n*, 571 F. App'x 298, 299 (5th Cir. 2014) (approving judicial notice of public record in considering a 12(b)(6) motion). Courts routinely take judicial notice of Form 5500 filings. *See, e.g.*, *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 920 (N.D. Cal. 2025); *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870, 875 (D. Ariz. 2025). Such documents, referred to as "Ex. __,"are filed as exhibits to the Declaration of Jacqueline M. Vallette.

5

## ARGUMENT

### I.   Plaintiff Does Not Plausibly Allege A Fiduciary Breach.

ERISA's duty of prudence asks courts to "objectively assess whether the fiduciary, at the time of the transaction, utilized proper methods." *Laborers Nat'l Pension Fund v. N. Tr. Quantitative Advisors, Inc.*, 173 F.3d 313, 317 (5th Cir. 1999). To state a prudence claim, Plaintiff must allege facts sufficient to demonstrate the Committee failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). "[T]he test of prudence is one of conduct, not results;" that is, the inquiry focuses on "how the fiduciary acted," not "whether his investments succeeded or failed." *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 253 (5th Cir. 2008). The fiduciary's conduct must also be evaluated considering the character and aims of the plan, on information available to the fiduciary "at the time of investment without the benefit of hindsight." *Metzler v. Graham*, 112 F.3d 207, 209 (5th Cir. 1997); *Kirschbaum*, 526 F.3d at 253-254. Where, as here, a plaintiff fails to allege facts about the fiduciary's decision-making process, he must allege sufficient circumstantial allegations to create a reasonable inference the process was flawed. *Locascio v. Fluor Corp.*, 2023 WL

6

320000, at \*4 (N.D. Tex. Jan. 18, 2023).

Plaintiff concedes he lacks knowledge about the Committee's fiduciary process. ¶¶64, 67. So his prudence theory is premised on the alleged underperformance the Prudential GIF as compared to a cherry-picked list of incomparable investments. *See* ¶¶100-09. Plaintiff's allegations are insufficient to plausibly infer the Committee's process was flawed.

### A.   Plaintiff's exclusive reliance on the Prudential GIF's alleged underperformance is fundamentally flawed.

Plaintiff's exclusive focus on returns ignores the specific character and aims of an SVF. An SVF—like the Prudential GIF—is a conservative, fixed income investment aimed at preserving capital while providing stable returns. ¶69; *see* Ex. A. Unlike other investments, SVFs provide participants with a ***direct guarantee*** of principal and accrued interest from the insurer. ¶70. Plaintiff does not allege the Prudential GIF failed to meet these objectives. Nor does he allege the Prudential GIF failed to offer participants its own stated goals of "stability of crediting rate," "guaranteed protection of principal and accumulated interest from market volatility," and "intermediate-term fixed income returns." *See* Ex. B.

In affirming dismissal of a similarly-flawed SVF claim, the First Circuit stressed that the SVF fulfilled its conservative investment objective. *Barchock v. CVS Health Corp.*, 886 F.3d 43, 50 (1st Cir. 2018) ("conservativism in the

management of a[n] [SVF]—when consistent with the fund's objectives disclosed to the plan participants—is no vice"). The court was also unconvinced by the plaintiffs' allegations that the SVF's asset allocation was too conservative, explaining that "[u]nless we are to say that ERISA plans may not offer very conservative investment options . . . then we cannot say that plans may not offer different types of stable value funds, including those that are intentionally and openly designed to be conservative." *Id.* (quoting *Ellis v. Fidelity Mgmt. Tr. Co.*, 883 F.3d 1, 9 (1st Cir. 2018)).

Like *Barchock*, the allegations here—which fail to address the Prudential GIF's goals or its guaranteed return—are insufficient to infer an imprudent fiduciary process. *See also Ellis*, 883 F.3d at 9-12 (rejecting claim that fiduciary imprudently managed SVF by establishing a too conservative benchmark and not investing in higher-risk instruments); *Pizarro v. Home Depot, Inc.*, 634 F. Supp. 3d 1260, 1299 (N.D. Ga. 2022), *aff'd* 111 F.4th 1165 (11th Cir. 2024) ("Plaintiffs' focus on returns to assess the prudence of a stable value fund is conceptually flawed, particularly since it is undisputed that the [fund] never lost money for participants…").

**B.      The Complaint does not allege any meaningful benchmark.**

Plaintiff's allegations also do not "provide a sound basis for comparison— a meaningful benchmark to show that a prudent fiduciary in like circumstances would have acted differently." *Locascio*, 2023 WL 320000, at *6;

8

*see also del Bosque v. Coca-Cola Sw. Beverages LLC*, 2025 WL 3171326, at \*3 (N.D. Tex. Nov. 13, 2025). The Supreme Court has recognized that the "circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 595 U.S. at 177. Plan fiduciaries must also make investment decisions by considering each investment's role in the plan. *See* 29 C.F.R. § 2550.404a-1(b)(i). As the U.S. Solicitor General urged in an amicus brief filed with the Supreme Court:

> When allegations of relative underperformance are used to support an inference that a fiduciary imprudently retained an investment, the alleged underperformance must be established in relation to one or more ***meaningful benchmarks—i.e., "alternative investment options [that] have similar investment strategies, similar investment objectives, [and] similar risk profiles to the plan's funds"***.

Brief for the U.S. as Amicus Curiae at 11, *Parker-Hannifan v. Johnson*, No. 24-1030 (U.S. Dec. 9, 2025) (quoting *Matney v. Barrick Gold*, 80 F.4th 1136, 1148 (10th Cir. 2023)) (emphasis added); *see also Locascio*, 2023 WL 320000, at \*6.[4]

---

[4] The Fifth Circuit has not faced the meaningful benchmark standard at the pleading stage, though a number of appellate courts—the Second, Sixth, Eighth, Ninth, and Tenth Circuits—have adopted the standard. *See, e.g.*, *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1022 (9th Cir. 2025), *cert. granted sub nom. Anderson v. Intel Corp. Inv.*, No. 25-498 (U.S. Jan. 16, 2026); *Singh v. Deloitte LLP*, 123 F.4th 88, 95-96 (2d Cir. 2024); *Matney*, 80 F.4th at 1150; *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 581-82 (7th Cir. 2022); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022); *Meiners*, 898 F.3d at 822. The Supreme Court also granted cert petition in a pending action

Courts correctly recognize ERISA does not "permit[] plaintiffs to dodge the requirement for a meaningful benchmark by merely finding a less expensive alternative fund or two with some similarity." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018). Nor can a plaintiff state a claim by simply pointing to better performing funds implementing dissimilar investment strategies, objectives, or risk profiles. *See, e.g.*, *Barchock*, 886 F.3d at 49-50 (rejecting comparison of SVFs); *Anderson*, 137 F.4th at 1023 (rejecting comparison where alleged benchmark pursued different objectives); *del Bosque*, 2025 WL 3171326, at *3 (rejecting benchmark where accounts were managed differently). Even investments in the same type of securities, but in different percentages, or the same type of assets, through different mechanisms, have been rejected as meaningful benchmarks. *See, e.g.*, *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020).

Here, Plaintiff asserts that "identical or substantially identical stable value funds with higher crediting rates…were available to the Plan" (¶102), but proffers no details about his hand-picked comparator funds, let alone

---

related to the question of whether an ERISA plaintiff must plausibly allege a meaningful benchmark. District courts within the Fifth Circuit are split. However, District Judge Starr applied the meaningful benchmark standard in two recent N.D. Texas decisions (*see del Bosque*, 2025 WL 3171326, *3; *Locascio*, 2023 WL 320000, at *3) and, in the most recent S.D. Texas case raising the issue, the Court analyzed the pleading under the standard but did not expressly adopt it. *See Cina v. Cemex, Inc.*, 2025 WL 2294331, at *1 (S.D. Tex. Aug. 8, 2025).

details showing they are meaningful benchmarks. Plaintiff puts forth pages of charts to gloss over the Complaint's factual deficiencies, but the information is meaningless without alleging his comparators have similar strategies, objectives, and risk profiles as the Prudential GIF. Plaintiff's silence is deafening, as his own authority explains SVFs "are managed in different ways" and "[t]here are numerous types of [SVF] contracts" that differ in contractual provisions, underlying assets, costs, and fees. Ex. A at 3 (cited at ¶69, n.10).

Plaintiff's first two comparator funds are a GIC allegedly offered by the Auto-Owners Insurance Company Retirement Savings Plan ("Auto-Owners GIC") and a GIC allegedly offered by the Shands Jacksonville Retirement Plan ("Shands GIC"). ¶¶103-105. The Complaint provides no details about these funds, but proclaims they are "identical or substantially identical stable value funds."[5] Even a cursory review of the materials cited in the Complaint proves they are not comparable to the Prudential GIF. *See* Ex. C.

For example, the Auto-Owners GIC is a *proprietary* general account investment contract offered by a wholly owned subsidiary of the plan's sponsor to its own retirement plan, subjecting participants to the credit risk of their

---

[5] For example, the Complaint does not allege they are separate or general account products; their investment and risk strategies; the composition of their underlying assets; they are individually managed or pooled investments; how crediting rates are determined; or restrictions on participants' abilities to exit the investments.

11

employer. *See* Ex. D at Auditor's Report p. 8-9 ("There are no reserves against contract value for credit risks of the contract issuer or otherwise."). This profiles a different risk than a GIC backed by a leading insurer (Empower). *See* Ex. C. Tellingly, the Complaint fails to allege the Auto-Owners GIC was even available to other plans, let alone offered by comparable plans at similar crediting rates.

The Shands GIC is also not comparable. The Complaint falsely alleges that the Shands GIC is offered by Variable Annuity Life Insurance Company ("VALIC"). ¶103. As shown in the plan's Form 5500 (*see* ¶103), the only traditional investment contract offered in the Shands Plan is a "Lincoln Financial Group Value Stable Account." *See* Ex. E at Independent Auditors' Report, p. 14. The Complaint never mentions the Lincoln fund, let alone provides details about it. And while the Shands Plan includes two VALIC "fixed accounts," they are not "traditional guaranteed investment contract[s]." ¶103. They are materially different synthetic investment contracts covering only 43 Shands Plan participants and holding fewer than $100,000 in plan assets. Ex. E at Schedule A, p. 13, Independent Auditors' Report at 14; ¶104.

Plaintiff lists several "other traditional guaranteed investment contracts." ¶109. None of these are meaningful benchmarks either. All the Complaint alleges about these funds is they are fully benefit-responsive and "had similar risk considerations based on their terms and the creditworthiness

12

of their insurance carriers" (¶107); it does not provide any details necessary to show they are actually comparable to the Prudential GIF. *See Locascio*, 2023 WL 320000, at *6 ("[S]imply labeling funds as comparable or a peer is insufficient to establish that those funds are meaningful benchmarks").

Moreover, while Plaintiff includes these "comparators" in a chart spanning 2020 to 2024, none are listed every year. *See* ¶109. For example, funds listed in 2023 and 2024 appear nowhere else in the chart; 2020 and 2022 both include a fund listed just once in the chart; and the vast majority of funds (10 of 13) are listed for only one year. *Id.* This temporal hodgepodge of cherry-picked funds merely shows products with an occasionally, rather than consistently, higher crediting rate. *See Clinton v. Baxter Int'l Inc.*, 2025 WL 3470685, at *7 (N.D. Ill. Dec. 3, 2025) (finding no benchmark pleaded because "[a]ll the complaint show[ed] … is that the [challenged fund] doesn't boast one of the top four to six crediting rates in a given year").

## C. Plaintiff's speculation about Empower's solvency does not support any injury.

Plaintiff devotes six pages of the Complaint to allegations regarding Empower's ***potential future*** insolvency (*see* ¶¶77-92), but such speculation does nothing to advance his claim.

To begin, Plaintiff's potential insolvency theory requires abandoning common sense, ignores leading credit risk analyses, and disregards

13

predominant business practices. Plaintiff preemptively and baselessly attacks the reliability of credit ratings, presumably aware Empower enjoys excellent credit ratings from S&P, Moody's, and Fitch. *See* ¶¶77-80; Ex. B. Plaintiff also claims that Empower's more than **$1 billion surplus** in December 2024 was "insufficient" given its allegedly "high risk" investments and reinsurance transactions and because its surplus-to-liability ratio was low compared to some undefined "national average." ¶¶81-82. While the Court must accept ***well-pleaded*** factual allegations, it need not accept allegations that are merely conceivable, speculative, or unsupported by factual content. *See Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019).

Even if the Complaint's concerns regarding Empower's $1 billion surplus had some foundation in fact, the potential threat of injury is far too remote and speculative to establish standing. "Injury in fact is a constitutional requirement." *Spokeo Inc v. Robins*, 578 U.S. 330, 339 (2016). A plaintiff must allege a "concrete and particularized" injury fairly traceable to the challenged conduct and likely to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The "threatened injury must be ***certainly impending*** to constitute an injury in fact…." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Allegations of "***possible*** future injury are not sufficient." *Id*. Nor are allegations resting on a "highly attenuated chain of

14

possibilities." *Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 854 (S.D. Tex. 2015).

Plaintiff's theory depends on a speculative chain of events: Empower will possibly experience future financial distress which will, based on its $1 billion surplus, impair its ability to satisfy obligations to the Plan. Plaintiff does not allege that Empower has ever failed to meet its obligations to the Plan (or any other plan), or that participants have not received their guaranteed principal or credited interest from the Prudential GIF. To the extent there is a risk of nonpayment, it is certainly not imminent, and is purely speculative. Courts have rejected materially identical allegations as insufficient to confer standing. *See Dempsey v. Verizon Commc'ns, Inc.*, 2026 WL 72197, at *8 (S.D.N.Y. Jan. 8, 2026) (allegations insurers were "likely to fail" were "conclusory and speculative" and insufficient to establish a substantial risk of harm); *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 546 (5th Cir. 2016) (no standing where alleged injury required realization of multiple speculative risks).

## II.   Plaintiff Fails to Allege a Prohibited Transaction.

### A.   Plaintiff lacks Article III standing.

Plaintiff's prohibited transaction theory—premised on the Plan's "annuity transactions" with Prudential—is barred because he lacks Article III standing. Plaintiff alleges the Plan engaged in prohibited transactions by paying fees to Prudential in connection with the Prudential GIF. ¶116. But

15

Plaintiff fails to allege he suffered a cognizable injury fairly traceable to that conduct. "District courts must … dismiss suits that allege a prohibited transaction occurred but fail to identify an injury." *Cunningham*, 604 U.S. at 708.

Plaintiff alleges Prudential received "significant benefits" from the Plan's investment in the Prudential GIF because it retained the "spread" (the difference between the amount Prudential earned on its underlying investments and the amount it paid to participants). ¶14. But, because the assets in the Prudential GIF are held in Prudential's general account, the spread was derived from Prudential's assets, not Plan assets. ¶94. This is fatal to Plaintiff's prohibited transaction claim. *See John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 96 (1993) (assets "obtained 'solely' by reason of issuance of 'an insurance policy or contract' that provides for benefits 'the amount of which is guaranteed'" are not plan assets under guaranteed benefit policy exclusion); *Teets v. Great-West Life & Annuity Ins. Co.*, 921 F.3d 1200, 1221 n.20 (10th Cir. 2019) (GIC that "guarantees participants' principal and all earned interest" and "fixes the rate of return in advance" falls within guaranteed benefit policy exclusion). Because Plaintiff has no property interest in Prudential's general account assets, he cannot plausibly allege any prohibited transaction or that Prudential's retention of "spread" caused him any injury. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S.

16

432, 440 (1999) ("[N]o plan member has a claim to any particular asset that composes a part of the [defined contribution] plan's general asset pool.").

### B.    Plaintiff's claim is time-barred.

Plaintiff's prohibited transaction claim is time-barred because ERISA claims are subject to a six-year statute of limitations from "the date of the last action which constituted a part of the breach or violation." 29 U.S.C. § 1113(1)(A). The six-year period is a statute of repose, and serves as an outer limit on the right to bring an action. *Intel Corp. Inv. Policy Comm. v. Sulyma*, 589 U.S. 178, 180 (2020). February 3, 2020, marks six years prior to the filing of this lawsuit. The Plan's publicly-available Forms 5500, referenced throughout the Complaint, show that the Prudential GIF has been offered since at least 2009. Ex. F. Because the only cognizable "transaction" is the initial contract to offer the Prudential GIF, and not subsequent payments, *D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins. Co.*, 88 F.4th 602, 612 (5th Cir. 2023), Plaintiff's claim is time-barred. *Cf. White v. Chevron Corp.*, 2017 WL 2352137, at *22 (N.D. Cal. May 31, 2017) *aff'd*, 752 Fed. Appx. 453 (9th Cir. 2018) ("a violation of § 1106 occurs when a fiduciary takes a particular action with respect to a Plan," and "there is no such thing as a 'continuing' prohibited transaction[;] . . . it is a point-in-time event").

Plaintiff's claim is also time-barred under 29 U.S.C. § 1113(2), which imposes a three-year limitations period where the plaintiff had "actual

17

knowledge" of the alleged violation. For prohibited transaction claims, this requires only awareness that the challenged transaction occurred. *Sulyma v. Intel Corp. Inv. Pol'y Comm.*, 909 F.3d 1069, 1075 (9th Cir. 2018), *aff'd*, 589 U.S. 178 (2020); *Lalonde v. Mass. Mut. Ins.*, 728 F. Supp. 3d 141, 150-52 (D. Mass. 2024). Plaintiff alleges he invested in the Prudential GIF during the class period (¶¶22, 34), and therefore had actual knowledge of that investment in 2020, yet did not sue until February 2026.

**C.    Plaintiff fails to allege a "party in interest" or a "transaction."**

Plaintiff also fails to plausibly allege the elements of a prohibited transaction under ERISA Section 406(a)(1). That section provides that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect…(C) furnishing of goods, services, or facilities between the plan and a party in interest; [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(C)-(D).

ERISA defines a "party in interest" as a "person ***providing*** services to [the] plan." 29 U.S.C. § 1002(14)(B) (emphasis added). The Fifth Circuit has held, to state a prohibited transaction claim under § 406(a), a plaintiff must plausibly allege a service provider was a party in interest ***at the time of*** the challenged transaction. *Markham*, 88 F.4th at 612 (affirming dismissal of

18

prohibited-transaction claim because "entities that are not already providing services to a particular plan at the time of contracting with that plan . . . are not 'parties in interest'"); *see also Ramos v. Banner Health*, 1 F.4th 769, 787 (10th Cir. 2021) (a "prior relationship must exist between the fiduciary and the service provider to make the provider a party in interest").

Plaintiff alleges Prudential was a party-in-interest because "Prudential, or its affiliates, were/are offering recordkeeping and trustee services to the Plan." ¶116. But he alleges nothing about the temporal connection between Prudential's provision of services and the annuity contract to offer the Prudential GIF. Critically, he does not allege Prudential was already providing services to the Plan when the parties entered into that contract. This is fatal to his claim.

Plaintiff also fails to allege a "transaction." *See* 29 U.S.C. § 1106(a)(1). Perhaps recognizing his prohibited transaction claim is time-barred, Plaintiff makes vague reference to purported transactions such as "annuity transactions" (¶¶138–39), fee payments (¶141), and spread retention (¶¶14-15). In the Fifth Circuit, a payment made pursuant to an existing arrangement is not a "transaction" under Section 1106(a). *Markham*, 88 F.4th at 612; *accord Danza v. Fidelity Mgmt. Trust Co.*, 533 F. App'x 120, 125 (3d Cir.). Consequently, none of Plaintiff's vaguely-alleged transactions support a prohibited transaction claim. *Id.* (rejecting claim that hiring a service provider

and paying allegedly excessive fees constituted a prohibited transaction, where the provider was not a party in interest at the time of contracting).

### III.    Plaintiff Lacks Standing to Pursue Injunctive Relief.

Plaintiff lacks standing for injunctive relief because he cannot satisfy Article III's redressability requirement. Redressability means that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. The Complaint's forward-looking injunctive relief, including removal of Plan fiduciaries and the appointment of an independent fiduciary to run the Plan, is prospective and directed to the Plan as a whole. Critically, the Complaint reveals Plaintiff is no longer a Plan participant. ¶22. Because he no longer participates in the Plan, proposed changes would provide no benefit to Plaintiff.[6] *See McWhorter v. Serv. Corp. Int'l*, 748 F. Supp. 3d 459, 471 (S.D. Tex. 2024) (former participants who had cashed out of plan lacked standing for prospective equitable relief due to lack of redressability) (citing *DeFazio v. Hollister Emp. Share Ownership Tr.*, 612 F. App'x 439, 441 (9th Cir. 2015)).

---

[6] Nor can Plaintiff create standing by seeking equitable relief such as disgorgement, *see* ¶37(E), because "[s]eeking an equitable remedy is insufficient to create standing without a concrete injury." *Dempsey*, 2026 WL 72197, at *9 (citing *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544 (2020)).

## IV.    Plaintiff Fails to State a Monitoring Claim.

Plaintiff's fiduciary monitoring claim[7] also fails. "[D]uty-to-monitor claims recognized by other courts inherently require a breach of duty by the appointed fiduciary." *Singh v. RadioShack Corp.*, 882 F.3d 137, 150 (5th Cir. 2018); *see also Wagner v. Hess Corp.*, 2025 WL 888428, at \*12-13 (N.D. Tex. Mar. 21, 2025). Plaintiff fails to allege such a breach. *See supra* Section I. Plaintiff's claim also fails because he has not pleaded any facts that Comfort Systems failed to monitor the Committee or otherwise breached any such duty. *See, e.g.*, *Locascio*, 2023 WL 320000, at \*7.

### CONCLUSION

Plaintiff fails to allege plausible claims or establish this Court's jurisdiction over his purported claims. The Complaint should be dismissed.

Dated: April 27, 2026                    Respectfully submitted,

**MAYER BROWN LLP**

*/s/ Charles S. Kelley*
Charles S. Kelley (Attorney-in-Charge)
Texas State Bar No. 11199580
SDTX Federal ID No. 15344
Brandon F. Renken
Texas State Bar No. 24056197
SDTX Federal ID No. 713645

---

[7] The Fifth Circuit has never recognized a failure to monitor claim. *See, e.g.*, *Perez v. Bruister*, 823 F.3d 250,  260 n.10 (5th Cir. 2016).

21

Jacqueline M. Vallette
Texas State Bar No. 24099000
SDTX Federal ID No. 2923339
Danielle M. Charron
Texas State Bar No. 24109713
SDTX Federal ID No. 3363244
Anna V. Durham
Texas State Bar No. 24120810
SDTX Federal ID No. 3620168
700 Louisiana St., Suite 3400
Houston, Texas  77002
Telephone: (713) 238-3000
Facsimile:  (713) 238-4888
Email: ckelley@mayerbrown.com
        brenken@mayerbrown.com
        jvallette@mayerbrown.com
        dcharron@mayerbrown.com
        adurham@mayerbrown.com

– and –

Richard Nowak (admitted *pro hac vice*)
MAYER BROWN LLP
Illinois State Bar No. IL6302664
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
Email: rnowak@mayerbrown.com

***Attorneys For Defendants Comfort Systems USA, Inc. and The Investment Committee of the Comfort Systems USA, Inc. 401(K) Plan***

22

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies Defendants Comfort Systems USA, Inc. and The Investment Committee of the Comfort Systems USA, Inc. 401(k) Plan's Motion to Dismiss contains 4,855 words, as calculated by Microsoft Word.

*/s/ Anna V. Durham*
Anna V. Durham

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on April 23, 2026, Defendants' counsel conferred with Plaintiff's counsel concerning this Motion in an effort to resolve the disputed matters and requests for relief, pursuant to Judge Eskridge's Court Procedures. Plaintiff is opposed to the relief requested herein.

*/s/ Charles S. Kelley*
Charles S. Kelley

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was duly served by electronic transmission to all registered ECF users appearing in this case on April 27, 2026.

*/s/ Anna V. Durham*
Anna V. Durham

23